UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00687-GNS

JOSHUA ADAMSON                                                                                          PLAINTIFF

v.

LUPIN PHARMACEUTICALS, INC; and
LUPIN LIMITED                                                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss filed by Defendants Lupin Pharmaceuticals, Inc. and Lupin Limited (jointly "Lupin") (DN 7). The motion is ripe for adjudication. For the reasons outlined below, the motion is **GRANTED**.

### I. SUMMARY OF FACTS AND CLAIMS

This matter arises out of injuries suffered by Plaintiff Joshua Adamson ("Adamson") allegedly as a result of taking a generic medication manufactured by Lupin. Adamson had been taking Amlodipine Besylate for about 10 days when he presented with symptoms such as a fever, sore throat, rash, and fatigue. (Compl. ¶¶ 11-12, DN 1-1). Adamson was diagnosed with Steven-Johnson Syndrome – a serious disease that causes the top layer of the skin to die and shed – leading him to spend several weeks in the burn and intensive care units. (Compl. ¶¶ 14-16). Adamson alleges that his illness was caused by taking Lupin's generic Amlodipine Besylate. (Compl. ¶ 14). Adamson filed suit in Oldham (Kentucky) Circuit Court asserting several state law claims against Lupin including negligence, failure to warn, and strict products liability. (Compl. ¶¶ 26 94). Lupin removed to this Court based on diversity of citizenship pursuant to 28 U.S.C. § 1441(a) and 28

U.S.C. § 1332(a)(1).  (Notice Removal 1, DN 1).  Lupin has moved to dismiss all claims.  (Defs.' Mot. Dismiss, DN 7).

## II.     JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a).

## III.    STANDARD OF REVIEW

"When a district court rules on a jurisdictional motion to dismiss, without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff."  *Moore v. Irving Materials, Inc.*, No. 4:05-CV-184, 2007 WL 2081095, at *2 (W.D. Ky. July 18, 2007).  "To defeat such a motion, the plaintiff need only make a prima facie showing of jurisdiction and the court should not weigh the controverting assertions of the party seeking dismissal."  *Id.* (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)).

## IV.     DISCUSSION

The Supremacy Clause establishes that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  Thus, "state law is naturally preempted to the extent of any conflict with a federal statute."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citations omitted).  While there are several types of preemption, the one at issue here is "impossibility preemption," which occurs when it is "impossible for a private party to comply with both state and federal requirements."  *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 (2011) (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)).  Defendants argue that all of Adamson's claims are preempted because it is impossible for them to comply both with the Federal Food,

Drug, and Cosmetic Act of 1938 ("FCDA") and duties imposed under Kentucky state law. (Defs.' Mot. Dismiss 5, DN 7).

The FDCA regulates the manufacture and sale of prescription medications. *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193, 196 (2005). When a brand-name manufacturer seeks to market a new drug, it must submit a New Drug Application with the FDA which requires, among other things, that the manufacturer supply the agency with "full reports of investigations which have been made to show whether or not such drug is safe for use and whether such drug is effective in use and specimens of the labeling proposed to be used for such drug." *Mitchell v. Actavis Pharms.*, 185 F. Supp. 3d 971, 975 (W.D. Ky. 2016) (internal quotation marks omitted) (citing 21 U.S.C. § 355 (b)(1)). In contrast, generic manufacturers, like Defendants, must only submit an Abbreviated New Drug Application. *Id.* (citing 21 U.S.C. § 355(j)). To receive FDA approval a generic drug manufacturer must: (1) "demonstrate that the generic drug it seeks to market is approved as a listed drug, meaning that the new drug product on which the generic drug is based already has FDA approval"; (2) show that the generic drug has the same active ingredients and is "bioequivalent" to the listed drug; and (3) supply "information to show that the labeling proposed for the [generic] drug is the same as the labeling approved for the listed drug . . . except for changes required because of differences approved under a petition filed under subparagraph (C) or because the [generic] drug and the listed drug are produced or distributed by different manufacturers." *Id.* (alterations in original) (citing 21 U.S.C. § 355(j)(2)(A)(i)-(v)). Once the generic drug has been approved by the FDA, "the generic manufacturer's only continuing duty is one of 'sameness'— that is, it must ensure that the warning label of the generic drug remains the same as the brand-name drug's label." *Id.* (citation omitted). In other words, generic drug manufacturers are not permitted to independently change the labeling or the contents from the brand-name drug. *Id.* The

3

bulk of Defendants' argument is that this duty of sameness prevents any duty that may arise with regard to their products under Kentucky state law. (Defs.' Mot. Dismiss 8).

### A. Failure to Warn (Count I) and Breach of Express Warranty (County VI)

The Supreme Court discussed the application of state tort law to generic drug manufacturers in *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011). In *Mensing*, the Court addressed a state tort claim against a generic drug manufacturer for lack of adequate warnings on the label. *Id.* at 617. The Court held that the state tort law requiring the generic drug manufacturer to change its label was preempted because it was impossible for the manufacturer to comply with both the state law and the FDA requirements. *Id.* at 618. The Court reasoned:

> Taking Mensing and Demahy's allegations as true, state law imposed on the Manufacturers a duty to attach a safer label to their generic metoclopramide. Federal law, however, demanded that generic drug labels be the same at all times as the corresponding brand-name drug labels. Thus, it was impossible for the Manufacturers to comply with both their state-law duty to change the label and their federal-law duty to keep the label the same.

*Id.* at 618 (internal citation omitted).

In *Mitchell v. Actavis Pharmaceuticals*, 185 F. Supp. 3d 971 (W.D. Ky. 2016), this Court applied *Mensing* to Kentucky failure-to-warn and design claims. *Id.* at 976-77. Regarding the plaintiff's failure-to-warn claim, the Court held that "[t]o the extent that Ms. Mitchell alleges that Actavis should have changed their labeling on their diazepam to better reflect the potential dangers or side effects posed by the drug, her claim is preempted. Federal law prevents Actavis from unilaterally altering the labels of [its] generic drug and, therefore, it is impossible for Actavis to simultaneously comply with both its state and federal duties." *Id.* at 976 (citations omitted). Similarly, in *Strayhorn v. Wyeth Pharmaceuticals, Inc.*, 737 F.3d 378 (6th Cir. 2013), the Sixth Circuit rejected the argument that a breach of warranty claim escaped preemption "to the extent that they are not premised on the inadequacy of the label but rather on the product's failure to live

4

up to or to conform to its label and advertising." *Id.* at 394 (internal quotation marks omitted) (citation omitted). "Under the FDCA, 'labeling' embraces 'all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article.'" *Id.* (quoting 21 U.S.C. § 321(m)). Likewise, the Supreme Court has held that the first clause "clearly embraces advertising, or descriptive matter that goes with the package in which the articles are transported." *Kordel v. United States*, 335 U.S. 345, 349-50 (1948). This includes brochures, booklets, mailings, catalogues, films, sound recordings, and literature, among other things, in the definition of "labeling," meaning that these items must all be "consistent with the drug's approved labeling." *Strayhorn*, 737 F.3d at 394; 21 C.F.R. §§ 202.1(l)(2), 201.100(d)(1). The Sixth Circuit thus concluded:

> Because such advertising and promotional materials are considered labeling, and because labeling is limited by federal law to the information contained in the brand-name drug's labeling, all of the warranty claims against the Generic Manufacturers based on these materials are preempted under *Mensing*. This follows from the fact that the Generic Manufacturers cannot meet their alleged state-law duty to provide an adequate warning without violating their federal duty of conformity to the Reglan label.

*Strayhorn*, 737 F.3d at 394 (citation omitted).

Applying the reasoning of *Mitchell* and *Strayhorn*, both Adamson's failure-to-warn and express warranty claims are preempted. Adamson's failure to warn claim alleges that the generic drug was not "accompanied by the appropriate warnings regarding all possible adverse side-effects and complications associated with the use of Amlodipine Besylate, nor with the adequate warnings regarding the risk of Stevens-Johnson Syndrome . . . ." (Compl. ¶ 29). Since Defendants lacked the power to independently alter the information on promotional materials pursuant to the FDCA, it is impossible for Defendants to comply with both the FDCA and any duty under Kentucky law that would require Defendants to enhance the drug's warnings. Thus, Adamson's failure to warn

5

claim is preempted. Similarly, Adamson's breach of express warranty claim alleges that "Defendants expressly warranted in their manufacturing, design, distribution, marketing and promotion of Amlodipine Besylate that Amlodipine Besylate was safe, effective and fit for use by Plaintiff and members of the consuming public generally . . . ." (Compl. ¶ 84). Because Defendants did not have the power to independently alter these materials, Adamson's breach of express warranty claim is also preempted.

### B. Defective Design (Count II) and Strict Products Liability (Count III)

Adamson's defective design and strict products liability claims are likewise both preempted because of Lupin's inability to unilaterally alter the design of their generic Amlodipine Besylate. In *Mitchell*, the court also examined the plaintiff's design defect claim. The court held that "[t]o the extent that Mitchell alleges Actavis should have altered the design of its diazepam, federal law prohibits Actavis from taking such action." *Mitchell*, 185 F. Supp. 3d at 977 (citations omitted). The Complaint alleges that Amlodipine Besylate was designed defectively. (Compl. ¶ 49). This defective design claim is preempted by federal law.

Adamson's strict liability claim alleges that "Defendants risked the lives of consumers of their products, including Plaintiff, with knowledge of the safety and efficiency problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages." (Compl. ¶ 67). However, as discussed above, Defendants lacked the power to redesign or relabel Amlodipine Besylate without running afoul of the FDCA. *See Mitchell*, 185 F. Supp. 3d at 976-77. Adamson's strict liability claim is thus preempted.

### C. Negligence (Count IV) and Negligent Misrepresentation (Count V)

Adamson's negligence claim makes a variety of allegations including: (1) negligence in manufacturing, designing, researching, labeling and assembling; (2) failure to conduct studies; (3) failure to warn; (4) failing to provide adequate instructions; and (5) advertising and recommending the use of Amlodipine Besylate. (Compl. ¶ 72). All of these claims are preempted by the FDCA because they relate back to FDCA prohibitions against changing the marketing materials, or altering the labels or the design of the drug. *See Mitchell*, 185 F. Supp. 3d at 976-77; *see also Gaeta v. Perrigo Pharms. Co.*, 562 F. Supp. 2d 1091, 1098 (N.D. Cal. 2008) (granting motion for summary judgment preempting negligence claim based on inadequate warning labels), *aff'd sub nom. Gaeta ex rel. A.G. v. Perrigo Pharms. Co.*, 469 F. App'x 556 (9th Cir. 2012).

Adamson asserts a negligent misrepresentation claim which is also preempted under a theory of impossibility. Adamson fails to specify in his Complaint where and what negligent misrepresentation Defendants make regarding Amlodipine Besylate. However, because Defendants are unable to unilaterally change the substance of the marketing materials or the warning labels, Adamson's claim is preempted. *See Mitchell*, 185 F. Supp. 3d at 976-77.

### D. Breach of Express Warranty (Count VI), and Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose (Count VII)

Finally, Adamson's claims for breach of express warranty and breach of implied warranty of merchantability and fitness for a particular purpose are also preempted.

Adamson claims as breach of express warranty that "Defendants expressly warranted in their manufacturing, design, distribution, marketing and promotion of Amlodipine Besylate that Amlodipine Besylate was safe, effective and fit for use by Plaintiff and members of the consuming public generally, that it was of merchantable quality, that its side-effects were minimal and comparable to other bisphosphonates and other bone loss treatment medications and that it was

7

adequately tested and fit for its intended use." (Compl. ¶ 84). These claims, however, are preempted because Lupin was proscribed from independently altering either the labeling or the design of its generic Amlodipine Besylate. *See Mitchell*, 185 F. Supp. 3d at 976-77; *see also Gaeta*, 562 F. Supp. 2d at 1098 (granting summary judgment in the favor of generic manufacturer on breach of express warranty claim). Thus, Adamson's claim is preempted.

Finally, Adamson's breach of implied warranty of merchantability and fitness for a particular purpose claims are also preempted. Adamson claims that "[a]t the time Defendants marketed, sold, and distributed Defendants' product Amlodipine Besylate for use by Plaintiff, Defendants knew of the purpose for which Defendant's product Amlodipine Besylate was intended and impliedly warranted Defendants' product Amlodipine Besylate to be of merchantable quality and safe and fit for such use." (Compl. ¶ 90). Again, since it is impossible for Lupin to independently alter either the labeling or the design of its generic Amlodipine Besylate this claim is preempted. *See Mitchell*, 185 F. Supp. 3d at 976-77.

## IV. CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 7) is **GRANTED**, and Plaintiff's claims against Defendants are **DISMISSED**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

August 16, 2022

cc: counsel of record